UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAKE CHARLES DIVISION

| | |
|---|---|
| **PERRY L. TAYLOR**<br>    **FED. REG. # 30549-034**<br>VS. | **CIVIL ACTION NO. 09-0925**<br><br>**SECTION P**<br><br>**JUDGE TRIMBLE** |
| **WARDEN JOSEPH P. YOUNG** | **MAGISTRATE JUDGE KAY** |

### REPORT AND RECOMMENDATION

*Pro se* petitioner Perry L. Taylor, filed the instant petition for writ of *habeas corpus* pursuant to 28 U.S.C. § 2241 on June 2, 2009. Petitioner is an inmate in the custody of the Federal Bureau of Prisons (BOP); he is incarcerated at the Federal Correctional Institution, Oakdale, Louisiana (FCIO) and he complains that he is being denied appropriate full term placement in a Residential Reentry Center (RRC). This matter has been referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. § 636 and the standing orders of the court. For the following reasons it is recommended that the petition be **DISMISSED WITH PREJUDICE.**

### *Background*

On May 1, 2008, petitioner pled guilty in the United States District Court for the Eastern District of Louisiana to being a felon in possession of a firearm. On August 7, 2008, he was sentenced to serve 37 months in custody and thereafter to 3 years of supervised release. Doc. 1,

Att. 2, p. 1-2.  He was placed in the custody of the BOP, which, by crediting petitioner with time served in custody prior to conviction and also crediting petitioner with projected earned good time credits, has calculated his release date as April 16, 2010.  *Id*. at 3-5.

When arrested on the federal firearm charge, petitioner was also charged in the New Orleans Municipal Court with one count of public drunkenness.  The federal felony charges took precedence and, as a result, the Municipal Court issued a *capias* bench warrant or detainer, and petitioner concluded that this detainer inhibited his ability to obtain RCC placement.  On November 19, 2008, the BOP determined that all outstanding charges in New Orleans had been disposed of.  *Id*. at 10-12.

On April 16, 2009, the BOP generated a Custody Classification Form indicating no outstanding warrants or detainers.  *Id*. at 13.  On the same date, his Unit Team, after review of petitioner's record, produced an Inmate Skills Development Plan which indicated continued processing of an RRC referral.  *Id*. at 14-22.

On April 23, 2009, petitioner asked the New Orleans Municipal Court to dismiss the public drunkenness charge and recall the *capias* bench warrant or detainer that had previously been issued.  *Id*. at 7-9.  On April 29, 2009, the charge was dismissed.  *Id*. at 6.

On April 14, 2009, petitioner submitted a Request for consideration for full term placement in a half-way house based on his assertion that upon his release he would be homeless, without a family, unemployed, with no vehicle or other means to support himself.  *Id*. at 1-3.  On April 16, 2009, petitioner complained to the Associate Warden, Ken Everhart, that he had received no response to his earlier request.  He also indicated that he was advised that there

were no special reasons to justify full term RCC placement. *Id*. at 25-26. On April 27, 2009, petitioner submitted a request for full term RCC placement to Warden Young. *Id*. at 30-31.

On May 7, 2009 Associate Warden Everhart and Warden Young replied to petitioner's request for RCC placement noting the existence of the pending public drunkenness charge in New Orleans and advising that RCC placement could not be considered until such time as those charges were resolved. *Id*. at 28-29.

On May 14, 2009, petitioner submitted another request inquiring about the factors utilized in the determination of the length of half-way house placement. On May 19, 2009, petitioner's case management coordinator replied, "Residential Release Center (RRC) placement is considered on an individual basis using the following factors: 1. Resources of the facility; 2. Nature and circumstances of the offense; 3. History and characteristics of the prisoner; 4. Any statement by the court that imposed sentence, and; 5. Any statement by the U.S. Sentencing Commission." *Id*. at 24. On May 20, 2009, Associate Warden Everhart replied to petitioner's previous inquiry and reiterated the response provided by the case management coordinator. *Id*. at 27.

On June 2, 2009, petitioner filed the instant lawsuit requesting "consideration for full term [RCC] placement under the Second Chance Act of 2007." Doc. 1.

While this suit was pending, on June 23, 2009, petitioner corresponded with the Director of Administration for the BOP seeking "advice or information." He complained about the amount of work he was required to do in conjunction with his prison orderly job and indicated that he was intimidated into withdrawing his grievance. He also complained about threats from

his roommates which resulted in a fight and a disciplinary write-up; and, again petitioner indicated that he was intimidated into withdrawing his formal grievance. Doc. 8, 6-8.

On July 29, 2009, petitioner corresponded with G. Maldonado, the Director of the BOP's South Central Region. In this letter petitioner complained that he was given a job placement as orderly for the Vernon One dorm and he was assigned the task of cleaning two restrooms and showers. According to petitioner he "found out" that, in other dorms four to six orderlies are assigned to do the type of work he was assigned and therefore he requested additional compensation from Warden Young. According to petitioner, he was again intimidated into dropping this complaint. He then complained that he was being threatened with physical harm from his roommates. Petitioner filed a grievance but was again intimidated to drop his complaint. Petitioner then advised the Regional Director of his belief that these complaints resulted in being denied full term RCC placement and instead being granted only 30 days RCC placement. He then concluded by requesting that the RCC placement "be done by someone other than Oakdale, Louisiana[.]" Doc. 6, 2-3.

Also on July 29, 2009, petitioner corresponded with Jill Benoit, Chief Probation Officer in New Orleans apparently requesting assistance with regard to a longer RCC placement. *Id.* at 4. Also on the same date, petitioner corresponded with Joe Cook of the American Civil Liberties Union in New Orleans. He submitted copies of the letters sent to Maldonado and Benoit and requested assistance and advice. *Id.* at 5. Also on the same date, petitioner submitted an Inmate Request to Warden Young complaining that he was recently advised that his Unit Team was now recommending only 60-days RCC placement. Doc. 7, 2-3.

On August 3, 2009, petitioner submitted a *pro se* Motion for Expungement to Louisiana's Fourth Circuit Court of Appeal requesting expungement of his New Orleans arrest records. Doc. 8, 2-4. On August 11, 2009, petitioner corresponded with Orleans Parish Criminal Sheriff M. Gusman requesting information on work release, placement of federal prisoners, and substance abuse treatment and applying for acceptance into the Sheriff's work-release program. Doc. 8, 5.

On September 9, 2009, petitioner filed an amended petition for writ of *habeas corpus*. Doc. 10. Among other things, petitioner argued that he should not be required to exhaust administrative remedies because "[t]ime is short and it would take five to six months to complete the procedure [and] this would only moot the petitioner's claim through no fault of his own[.]" *Id*. at 4. Petitioner prayed for an order directing his immediate release to a half-way house in New Orleans. *Id*. 8. Petitioner provided various exhibits in conjunction with his amended petition including the following relevant documents:

1. Petitioner's July 29, 2009 Inmate Request to Warden Young complaining about RRC placement. *Id*. at 23.

2. Petitioner's letter to the Regional Director of the BOP dated July 29, 2009 in which he complains about his unit team's RRC recommendation. *Id*. at 14-15.

3. A memorandum dated August 5, 2009 from Warden Young concerning a complaint petitioner submitted to the BOP Central Office. Among other things, Warden Young noted,

> You were recently reviewed by members of your unit team for placement in an RRC, after pending charges in New Orleans, LA, were withdrawn. Members of your unit team advise they have explained this procedure and have begun their request. You will be advised of the appropriate amount of placement after the Executive Staff's review. The decision will be based on your current offense, prior criminal history, institution adjustment and recentness and severity of any

5

> incident reports. Members of your unit team also advise, you were being considered for public law placement as they were unable to clear up the recent pending charges. However, with the charges having recently been withdrawn, no further consideration has been given.
>
> We are pleased to find you will have no problem securing gainful employment and residence upon your release as you have stated in your correspondence. You will be advised of any progress made toward your RRC placement.

*Id.* at 11.

    4. A second Memorandum from Warden Young, also dated August 5, 2009 concerning petitioner's recent correspondence with the Regional Office, stating,

> In response to your statement/question regarding your unit team's recommendation for placement in RRC, consideration will be given to your current offense, prior criminal history, institution adjustment, and recentness and severity of incident reports. You will be notified of the amount of time deemed necessary for your placement to include a negative response if necessary.
>
> \*    \*    \*
>
> Because the Second Chance Act prescribes the maximum amount of time for which inmates are eligible for pre-release RRC placement as 12 months, BOP staff are reviewing each inmate for pre-release RRC placement 17-19 months before the inmate's projected release date. Notwithstanding the statutory cap of 12 months, it is the BOP's experience that inmates' re-entry needs can usually be met with six months or less in an RRC. An RRC placement beyond six months will only be approved upon a showing of an inmate's extraordinary and compelling re-entry needs. The BOP will continue to balance each inmate's individual needs with the agency's duty to use its limited resources judiciously and to provide re-entry serves to as many inmates as possible.

*Id.* at 13.

    5. A memorandum from Warden Young dated August 11, 2009 which responds to petitioner's Request complaining about the 60 day RRC recommendation. Therein Warden Young noted,

> Members of your unit team advise you are being reviewed for a maximum of 60 days in an RRC. As you have previously been made aware through recent Inmate Request to Staff Member forms, recommendations for an inmate's need for re-entry services are based on the resources and ability of the RRC to meet the offender's needs, the nature and circumstances of the inmate's offense, the inmate's history, any statement by the sentencing court regarding a period of community confinement, any potential risks to public safety, and the need for the BOP to manage the inmate population in a responsible manner are all to be taken into consideration. A decision to recommend a maximum of 60 days is based on your history of weapons possession; specifically for Armed Robbery and the current offense of Possession of a Weapon by a Convicted Felon, Aggravated Burglary, Endangering Safety, and several prior arrests for Battery and Assaults. You have failed to maintain appropriate institutional adjustment based on a documented Fight on May 22, 2009. Members of your unit team will keep you advised of any decisions regarding the 60 day RRC recommendation.

*Id*. at 22.

6. A letter from the BOP Regional Director Dated August 24, 2009. According to the letter, petitioner's previous correspondence to the Director of the BOP was forwarded to the Regional Office. The Regional Director noted,

> The Second Chance Act of 2007 (the 'Act') . . . changes the Bureau of Prisons' statutory authority for making pre-release RRC placement decisions. The Act requires that inmates be individually considered for pre-release RRC placements based on an assessment of five criteria: The resources of the facility; the nature and circumstances of the offense; the history and characteristics of the prisoner; any statement by the court that imposed the sentence; and any pertinent information issued by the U.S. Sentencing Commission. The Act increases the maximum time allowed for a pre-release RRC placement to 12 months.
>
> A review of your records indicates you have been reviewed under the Second Chance Act for RRC placement and were submitted for a 30 to 60-day placement to the Community Corrections Manager (CCM). Based on a review of all factors identified above, we have determined this placement is appropriate.

*Id*. at 9-10.

On October 6, 2009, petitioner submitted another pleading entitled "Petition of

Mandamus to Supplement 28 U.S.C. § 2241." Doc. 11. Therein petitioner asserted his desire "to compel the court to give judgmental relief within 30 days of receiving this writ of mandamus and comply with the habeas petition[.]" Petitioner attached the following relevant exhibits:

    1. Inmate Skills Development Plan dated October 2, 2009. *Id*. at 13-20.

    2. A response to Administrative Remedy Procedures Grievance from the National Inmate Appeals Office dated August 26, 2009 stating, "[a] review of your inquiry reveals it contains issues you should first bring to the attention of institution staff. If you are unable to resolve the issue(s) informally, you may present your complaint to the Warden via the Administrative Remedy Procedure. This procedure is available to inmates confined in federal facilities to complain about any aspect of their confinement." *Id*. at 21.

    3. Letters dated July 13, 2009 directed to Kathleen Kenny, Assistant Director/General Counsel of the BOP, the BOP Director of Administration, and United States Senator Mary Landrieu requesting a longer RCC placement. *Id*. at 22- 27.

    4. Petitioner's May 26, 2009 Regional Appeal and the Regional Director's August 25, 2009 Response to petitioner's grievance. Petitioner complained of a Disciplinary Hearing which resulted in a conviction for fighting. The request for relief at the Regional level was denied. *Id*. at 28-31.

    Finally, on November 11, 2009, petitioner filed a Motion of Demand for the Order to Show Cause. Doc. 15. In this motion, petitioner sets forth the same facts and arguments contained in his complaint and prays that "this Honorable Court Grant his Writ of Habeas Corpus . . . ." *Id.* at 11.

*Law and Analysis*

*1. Proper Remedy*

A federal prisoner may challenge the manner in which his sentence is being executed by filing a petition for writ of *habeas corpus* pursuant to 28 U.S.C. § 2241 in the judicial district where he is incarcerated. More specifically, and *apropos* to the instant petition, a prisoner may utilize the provisions of § 2241 to challenge the BOP's refusal to authorize his placement in Residential Re-entry Center (RCC), Community Corrections Center (CCC) or halfway house.[1]

*2. Exhaustion of Administrative Remedies*

Prisoners can only utilize the provisions of § 2241 if they first exhaust administrative remedies prior to presenting their claims in federal court. *See Fuller v. Rich*, 11 F.3d 61, 62 (5th Cir. 1994). The BOP provides a 3-step administrative procedure for inmates who seek formal review of their complaints. *See* 28 U.S.C. §§ 542.10-542.19. Bureau of Prisons Program Statement (PS) 1330.13, Administrative Remedy Program, outlines the procedure and provides detailed guidance regarding the procedures to be employed. Prisoners may first "seek informal review of an issue which relates to any aspect of [their] confinement." 28 C.F.R. § 542.10. If unsuccessful, prisoners must thereafter utilize the formal procedures which involve the filing of a BP-9 (to the Warden), BP-10 (to the appropriate BOP Regional Office), and BP-11 (BOP

---

[1] See the excellent discussion in *Mihailovich v. Berkebile*, 2007 WL 942091 (N.D. TX. Mar. 28, 2007)– an unpublished opinion of the United States District Court for the Northern District of Texas. In that case, a BOP inmate challenged the BOP's denial of placement in a RCC and concluded "... as noted in [*Woodall v. Federal Bureau of Prisons*, 432 F.3d 235 (5th Cir. 2005)], confinement in a traditional federal prison is 'qualitatively different' from community confinement, and thus justifies utilization of § 2241 for challenging BOP regulations regarding placement in a CCC. 432 F.3d at 243-44. In light of [*Sonnier v. Francis*, 217 Fed. Appx. 410 (5th Cir. 2007)] the other cited cases, the facts of [*Carson v. Johnson*, 112 F.3d 818 (5th Cir.1997)], and petitioner's lack of recourse, the Court finds that petitioner properly invoked jurisdiction under § 2241."

National Inmate Appeals) form. *Id. §§ 542.13*, 542.14, 542.15, 542.18. The BP-11 appeal "is the final administrative appeal." *Id. § 542.15*(a). Only after this three-step review process is completed, can a BOP inmate's claim be considered exhausted.

Only when "the available administrative remedies . . . are unavailable or wholly inappropriate to the relief sought, or where the attempt to exhaust such remedies would itself be a patently futile course of action . . ." are inmates exempted from the requirement that they exhaust administrative remedies prior to proceeding with a *habeas* action. *Fuller*, 11 F.3d at 62 (citation omitted). Such exceptions to the exhaustion requirement "apply only in 'extraordinary circumstances,' and [petitioner] bears the burden of demonstrating the futility of administrative review." *Id.* (citations omitted). Thus, if a BOP inmate demonstrates an applicable exception to the exhaustion requirement, he may obtain a merits ruling on his § 2241 petition despite a lack of exhaustion. *See id.*

Petitioner is aware of the administrative remedies procedures. Petitioner has, in fact, invoked those procedures with respect to his medical care and disciplinary conviction claims. However, he has not properly utilized those proceedings with respect to his RCC placement claim. While petitioner has corresponded with the Regional and National Directors of the BOP, his correspondence was not in the form or substance of an appeal; his letters were only inquiries. So too, petitioner corresponded with the National Director before he sought assistance at the Regional level. Thus, even if his inquiries may be considered grievances, he has failed to submit his appeals in a procedurally correct manner in accordance with BOP regulations. A BOP inmate does not exhaust administrative remedies until such time as he completes the entire 3-step

process culminating in the rejection of the BP-11 at the national level. Petitioner did not even submit his "inquiries" to the Regional and National Directors until AFTER he filed the instant petition.

Finally, this is exactly the type of dispute that may best be resolved through the administrative review process. *See Parisi v. Davidson*, 405 U.S. 34, 37, 92 S.Ct. 815, 31 L.Ed.2d 17 (1972), "[t]he basic purpose of the exhaustion doctrine is to allow an administrative agency to perform functions within its special competence – to make a factual record, to apply its expertise, and to correct its own errors so as to moot judicial controversies." Petitioner must exhaust his administrative remedies with respect to this issue; his failure to do so should not be excused.[2] Petitioner's habeas corpus application is subject to dismissal for failure to exhaust administrative remedies.

Petitioner contends that he should not be required to exhaust administrative remedies because "[t]ime is short and it would take five to six months to complete the procedure [and] this would only moot the petitioner's claim through no fault of his own[.]" Doc. 10, 4. However, petitioner was aware long ago of the unit team recommendation and he failed to timely pursue administrative remedies. He cannot now claim that he should be exempt from the requirement based upon his failure to seek administrative review in a timely manner.

---

[2] Although the Supreme Court has held that the failure to exhaust administrative remedies must be pleaded as an affirmative defense under the Prison Litigation Reform Act ("PLRA"), see *Jones v. Bock*, 549 U.S. 199, 216, 127 S.Ct. 910, 921, 166 L.Ed.2d 798 (2007), the PLRA does not apply to federal *habeas* proceedings. Nothing in *Jones* prohibits the *sua sponte* dismissal of a section 2241 petition on exhaustion grounds.

Further, even in cases governed by *Jones* and the PLRA, "... a court can dismiss a case prior to service on defendants for failure to state a claim, predicated on failure to exhaust, if the complaint itself makes clear that the prisoner failed to exhaust." *Carbe v. Lappin*, 492 F.3d 325, 328 (5th Cir.2007). Petitioner's complaint and exhibits make it abundantly clear that he did not complete the BOP administrative remedy procedure prior to filing suit.

In short, petitioner's habeas petition is subject to dismissal because he failed to exhaust administrative remedies prior to filing suit.

### 3. The Merits

Nevertheless, even if petitioner is exempted from the exhaustion requirement, or, even if his grievances may now be considered exhausted, he is not entitled to relief. In order to state a claim for relief pursuant to 28 U.S.C. § 2241, a *habeas corpus* petitioner must allege and ultimately establish that he is in custody in violation of the Constitution and laws of the United States; and, the *habeas* petitioner has the burden of proof with regard to his claims for relief.

Petitioner implies that the prison administration has not properly applied the provisions of the Second Chance Act (PL 110-199) and thus deprived him of liberty without due process. However, petitioner's claims are conclusory at best and thus insufficient to establish that the decision making process of the prison administration was flawed or otherwise violated the Constitution or laws of the United States.

The Second Chance Act amended 18 U.S.C. § 3624(c)(6) and directed the Director of the BOP to issue regulations to

> ... ensure that placement in a community correctional facility by the [BOP] is (A) conducted in a manner consistent with section 3621(b) of this title; (B) determined on an individual basis; and, (C) of sufficient duration to provide the greatest likelihood of successful reintegration into the community...

Title 18 U.S.C. §3621(b) provides:

> The Bureau of Prisons shall designate the place of the prisoner's imprisonment. The Bureau may designate any available penal or correctional facility ... considering –
>
> (1) the resources of the facility contemplated;

>(2) the nature and circumstances of the offense;
>
>(3) the history and characteristics of the prisoner;
>
>(4) any statement by the court that imposed the sentence –
>
>>(A) concerning the purposes for which the sentence to imprisonment was determined to be warranted; or
>>(B) recommending a type of penal or correctional facility as appropriate; and
>
>(5) any pertinent policy statement issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28...

The BOP has promulgated Interim Rules for the implementation of the Second Chance Act of 2007. *See* 73 Fed. Register 62440-01, 28 CFR Part 570, October 21, 2008. Pursuant to Section 570.22, the interim rules direct that the regulations be implemented to ensure that placements in community confinement are: "Conducted in a manner consistent with 18 U.S.C. § 3621(b); Determined on an individual bases; and Long enough 'to provide the greatest likelihood of successful reintegration into the community." The interim regulations further specify that with regard to the determination, the factors outlined in § 3621(b) (the resources of the facility; the nature and circumstances of the offense; the history and characteristics of the prisoner, etc.) will be considered.

As shown above and notwithstanding petitioner's assertion to the contrary, those very guidelines have consistently been considered in making the complained of recommendation. *See* doc. 1 Att. 2, p. 24, 27; doc. 10, 9–13, 22. In other words, the available evidence establishes that the prison authorities complied with the requirements of 18 U.S.C. §§ 3621 and 3624 in making their recommendation, and thus petitioner, who bears the burden of proof as to this issue, has not

established that his custody violates the Constitution or laws of the United States.

Therefore,

**IT IS RECOMMENDED THAT** the Petition for Writ of *Habeas Corpus* be **DENIED** and **DISMISSED WITH PREJUDICE** because petitioner failed to exhaust available administrative remedies prior to filing suit and, he has not shown that he is in custody in violation of the Constitution or laws of the United States.

**IT IS ORDERED THAT** petitioner's Motion of Demand for the Order to Show Cause [doc. 15] is **DENIED**.

Under the provisions of 28 U.S.C. §636(b)(1)(C) and Fed.R.Civ.Proc. 72(b), parties aggrieved by this recommendation have ten (10) business days from service of this report and recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within ten (10) days after being served with a copy thereof.

**Failure to file written objections to the proposed factual finding and/or the proposed legal conclusions reflected in this Report and Recommendation within ten (10) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. See** *Douglas v. United Services Automobile Association,* **79 F.3d 1415 (5th Cir. 1996).**

In Chambers, Lake Charles Louisiana, this 17th day of November, 2009.

_____
KATHLEEN KAY
UNITED STATES MAGISTRATE JUDGE